ALLEN O. PECK *et al. vs.* THE BANK OF AMERICA *et als.*

When the transfer of corporate stock by an executor is apparently in the ordinary course of administration, the transfer officer of the corporation may safely permit the transfer without looking beyond the executor's letters testamentary.

But if the circumstances of the transfer show it not to be in the ordinary course of administration, it is the duty of the transfer officer to inquire into the authority of the executor before permitting the transfer.

M., widow and executrix of her testator, and having a life interest in the residue of his estate, nine years after his death, by her attorney W. conveyed to herself bank stock, a part of said residue, to support her indorsement of a note of W. which was discounted by the bank, and the proceeds appropriated by W.

*Held,* that the circumstances of the transfer were such as should have put the transfer officer on inquiry.

A bill in equity being filed by the remainder men to establish their title to this stock, the bank insisted on its charter lien upon the stock of debtor stockholders, M. being a debtor by her indorsement.

*Held,* that the bank had a lien only to the extent of M.'s beneficial interest in the stock.

In cases of fraud the statute of limitations runs in equity from the discovery of the fraud, not from its perpetration.

BILL IN EQUITY to establish a title to corporate stock and for an injunction.

*February* 8, 1890. MATTESON, J. This is a bill brought by the children, residuary devisees and legatees of Allen O. Peck, deceased, against Mary E. Peck, their mother, Benjamin W. Smith, her assignee for the benefit of creditors, and the Bank of America. The purpose of the bill is to determine the rights of the complainants and of the respondent bank to sixteen shares in the capital stock of the latter. The cause was heard on bill, answers, and an agreed statement of facts. The case as it appeared upon the hearing was as follows, viz.: Allen O. Peck died September 15, 1871, leaving a last will and testament, the residuary clause of which was as follows, to wit:

" I give, devise, and bequeath all the residue and remainder of my estate of all kinds to my children, share and share alike, to have and to hold the same to them and their respective heirs, subject, however, to the following provision for my wife, Mary Elizabeth Peck: in lieu of her dower in my said estate, my said wife may use, occupy, and enjoy such parts of my estate as she may at any time elect for the residence of herself and my children, and the income of all other parts of my said estate for the use and benefit

of herself and my children during her life, and until the day of her marriage ; but from the day of her marriage and for the remainder of her life she may have the use and income of one half of my estate, including such part thereof as she may select for her residence, and the household furniture."

This will was duly proved in the Municipal Court in Providence, and the respondent, Mary E. Peck, named therein as executrix, accepted the trust, qualified herself to act, administered the estate, and September 8, 1874, having completed the administration, filed a statement in said municipal court, showing that there remained of said estate certain property items, among which were the sixteen shares in suit. Being unused to business, she relied in her business transactions on the advice and direction of her brother, the late Henry C. Whitaker, who, however, took advantage of her inexperience for his own ends, and misled and deceived her, and thereby obtained her indorsement on various promissory notes of which he was the maker, the proceeds of which he applied to his own use. He also obtained from her a blank power of attorney, signed by her as executrix, by which, on his statement that said sixteen shares belonged to her, he, on July 9, 1880, procured the transfer of said shares to her individually, and also the discount by the respondent bank of his note, bearing her indorsement, the proceeds of which were, at his request, placed to his credit and paid out on his checks. This note was renewed from time to time, until Whitaker died in 1887, when the true state of affairs came to light. Neither the respondent, Mary E. Peck, nor the estate of Allen O. Peck, received any part of the proceeds of said note. The respondent bank, in discounting the original note and in the renewals thereof, relied for security on the indorsement of said Mary E. Peck, and her supposed ownership of said shares, and the lien thereon given by the following provision of its charter, viz. :

" Art. 4. . . . No person indebted to the bank shall be allowed to sell or transfer his or her stock without the consent of the directors, and this whether indebted as principal, surety, or indorser, and whether the debt has become due or not. The stock of each stockholder shall be liable, and may be sold at auction by order of the president and directors, for the payment of any debt

due from such stockholder to the bank, or so much thereof as may be necessary on default of payment thereof when due; but sixty days' previous notice shall be given of such sale in some one of the newspapers printed in the city of Providence."

The respondent bank had no knowledge of any misleading advice of said Whitaker to said Mary E. Peck, nor of any imposition practised on her by him, nor had the complainants any knowledge of the transactions whereby said bank claims its lien, until after the death of said Whitaker. All of the dividends upon said shares since July 9, 1880, except one, have been drawn by Mary T. Peck, one of the complainants, for and as agent of said Mary E. Peck. After the death of said Whitaker suits were brought against said Mary E. Peck, and attachments were placed upon her property, to dissolve which she made a general assignment, under Pub. Stat. R. I. cap. 237, § 12, to the respondent Smith, for the benefit of her creditors.

In Peck v. Smith, ante, p. 260, we held that, under the clause of said will above quoted, said Mary E. Peck took a life estate in the residuary property, partly if not wholly free from trust for the complainants, and that her beneficial interest therein was assignable.

The complainants contend that the respondent bank was chargeable with notice that the transfer of said shares by Mary E. Peck, as executrix, to herself individually, was improper, and therefore acquired no lien thereon, or at most acquired a lien thereon only to the extent of her beneficial interest. The respondent bank denies that it was so chargeable. It argues that, as admittedly there was no actual notice to it that the transfer was improper, there was no constructive notice of such impropriety, unless on legal principles it was bound to take notice of said will. It contends that it was not so bound; that an executor or administrator has absolute power of disposal over the personal effects of his testator or intestate, and that these cannot be followed by creditors or legatees into the hands of the alienee; that letters testamentary are always sufficient evidence of authority to transfer stock, because a sale and transfer are in the line of duty of an executor, viz.: to dispose of the property to pay the testator's debts; and it therefore insists that a bank may safely permit a

transfer of stock by an executor without looking for his authority beyond his letters, and has no right to require any further evidence of his authority.

This contention is doubtless correct when the proposed transfer is apparently in the ordinary course of administration for the purpose of raising money to pay the testator's debts, or the legacies given by the will. In such a case, the officer of the corporation, whose duty it is to supervise the transfer, can have no means of ascertaining whether or not the transfer is for the purposes named, except by inquiry of the executor himself, since, generally, no one else would have knowledge of the condition of the estate. If, however, the circumstances attending the proposed transfer show that it is not in the ordinary course of administration, it becomes the duty of the transfer officer, before permitting it, to inquire into the authority of the executor to make it. Corporations stand upon the footing of trustees, in relation to their stockholders, for the protection of their interests. Being custodians of the primary evidence of title to the stock, they are held to the exercise of reasonable care and diligence in its preservation. Their safety, therefore, requires them, before permitting a transfer, to be satisfied of the authority of the person to make it. Hence they are entitled to require the production of satisfactory evidence of such authority, and, though generally the possession of the legal title is sufficient evidence thereof, it is not always so, since the real equitable ownership may be in some other than the holder of the legal right, and this is especially true of an executor, for it not infrequently happens that under the provisions of the will others are equitably interested in the stock. An unauthorized transfer, therefore, may work a serious wrong to the equitable owner, and if the corporation allows it to be made with notice of the want of authority, or, if put upon inquiry, without proper investigation into the authority, it becomes a party to the wrong. In equity, whatever puts upon inquiry is notice of what inquiry would disclose. *Bayard* v. *Farmers' & Mechanics' Bank*, 52 Pa. St. 232.

In *Lowry* v. *The Commercial and Farmers' Bank of Baltimore*, 3 Amer. Law Journal N. S. 111, it was held that, where bank stock had been bequeathed to an executor in trust to pay the divi-

dends to certain persons, and the executor had transferred it to one who made advances on it for the use of the executor, the bank which issued the certificate, having notice that the stock belonged originally to the testator, was bound to look to the title of the executor under the will before it permitted the transfer. In that case the transfer was made by the executor as such, and there was no proof of any actual notice to the bank that other persons were equitably interested in the stock, or that the executor was abusing his trust and applying the stock to his own use. But Taney, C. J., held that the bank was bound to take notice of the will when the transfer was proposed by one of the executors; that it was negligence in the bank not to examine it, and that, if it was ignorant of its contents and of the specific bequest of the stock, it was its own fault; that it must be dealt with as if it had possessed actual knowledge that the stock in question was specifically bequeathed, and was not by the will to be transferred, or in any manner disposed of, by the executors, during the lifetime of the complainant. He then proceeded to show that, while it might have been sold, if necessary, for the payment of debts, there was enough to indicate to the bank that it was not needed for such a use. The bank was, therefore, held liable as a party to the fraud of the executor. And see, also, *Stewart & Duffy, Trustees,* v. *Fireman's Ins. Co.* 53 Md. 564; *Covington* v. *Anderson,* 16 Lea, Tenn. 310; *Caulkins* v. *Gas Light Co.* 1 Pickle, Tenn. 683; *Hill* v. *Simpson,* 7 Ves. Jun. 152.

The transfer in the present case was not apparently in the ordinary course of administration. It was made nearly nine years after the testator's death, and nearly six years after the period limited by the law of this State for the settlement of estates had elapsed. Moreover, it was made, not to another person for the purpose of raising money for the benefit of the testator's estate, but to the executrix individually, for the purpose of affording security for her indorsement on the note of Whitaker. These circumstances of the proposed transfer were enough to have put the transfer officer of the bank upon inquiry. The fact that the proposed transfer was to be made by an executrix was notice of the existence of the will. An examination of the will, the production of which, or a certified copy of the record of which, he

could have required, would have disclosed the true state of the title to the stock. It was negligence in him to rely upon the statement of Whitaker as to the ownership, instead of consulting the will, and, if loss is to result, it should be borne by the bank whose agent he was, and not by the complainants.

The respondent bank further contends that the complainants are barred by the statute of limitations from impeaching the good faith of the transaction. This defence cannot avail. The transfer of the stock in the circumstances recited was, in contemplation of equity, a fraud upon the rights of the complainants. In equity, in cases of fraud, the statute of limitations begins to run, not at the time the fraud is perpetrated, but from the time of its discovery. *Parham* v. *McCravy*, 6 Rich. Eq. 140; *Meader* v. *Norton*, 11 Wall. 442; *Evans* v. *Bacon*, 99 Mass. 213; *Bertine* v. *Varian*, 1 Edw. Ch. 343; *Henry County* v. *Winnebago Drain Co.* 52 Ill. 299. The complainants had no knowledge of the transaction in question until 1887, and the bill was filed January 17, 1888.

We think the complainants are entitled to a decree that the respondent bank has a lien upon said sixteen shares, only to the extent of the beneficial interest of the said Mary E. Peck therein. What that interest is was discussed to some extent in the complainants' brief, but was not considered in that of the respondent bank. We are not prepared to pass upon that matter without fuller argument.                          *Order accordingly.*

*Joseph C. Ely*, for complainants.

*Edward D. Bassett*, for respondent, the Bank of America.

*Benjamin W. Smith, pro se ipso.*