## ELLEN O. PECK *et al. vs.* THE PROVIDENCE GAS COMPANY *et als.*

A corporation is bound to use reasonable care to protect the title of an equitable owner of its stock against unauthorized transfers.

That an executor proposes to transfer stock seven years after the death of the testator, and four years after the expiration of the time limited by law for the settlement of estates, is itself notice that the transfer is probably not to raise money for debts or legacies.

When the effect of a will is to make an executor trustee with power to sell and reinvest as he may think desirable, a corporation is justified in permitting him to transfer stock upon sales by him made, notwithstanding the lapse of time above mentioned.

The fact that transfers were made to banks will not charge the corporation with notice that the transfers were by way of pledge and not of sale to the transferees or to others. Purchasers may have desired such transfers as security for their own borrowings.

The fact that transfers to and from the individual who was trustee were made by banks during the time of the trust will not put the corporation upon inquiry as to fraud when the individual was known to have means and to have purchased and sold its shares.

BILL IN EQUITY to establish title to corporate stock or for compensation. Heard on an agreed statement of facts, which are stated in the opinion of the court.

*Joseph C. Ely*, for complainants.

I. The transfers in pledge having been made so long after the decease of Allen O. Peck, of which event said defendant Gas Company was informed at or about the time it happened, said Gas Company was charged with constructive notice of the illegality of such pledge, by concurrence participated in the wrong done to these complainants, and should answer therefor. *Lowry* v. *Commercial & Farmer's Bank of Baltimore*, Taney's Ct. Ct. Dec. 310; *Stewart & Duffy, Trustees*, v. *Firemen's Insur. Co.* 53 Md. 564; *Peck* v. *Bank of America*, 16 R. I. 710.

II. Said notice charged them with knowledge of said will of Allen O. Peck and all probate proceedings. Cases cited above, and *Caulkins* v. *Gas Light Co.* 85 Tenn. 683, 695; *Albert* v. *Savings Bank of Baltimore*, 1 Md. Ch. Dec. 408, 417.

III. Power to executrix to sell did not give power to pledge. *Loring* v. *Brodie*, 134 Mass. 453; *Rhode Island Hospital Trust Company* v. *Commercial Nat. Bank*, 14 R. I. 625.

IV. A pledge so long after decease of the testator should have put the Gas Company on its guard. See Lowell on Transfer of Stock, § 75.

The transfer to this bank and to the several cashiers was strong constructive, if not actual, notice that it was a pledge. *Covington* v. *Anderson*, 16 Lea, Tenn. 310, 319.

V. When the stock was released by the pledgees, to allow the stock to be transferred to Mrs. Peck individually was a wrong to these complainants which entitles them to the relief for which they ask as against said Gas Company. *Magnus* v. *Queensland Nat. Bank*, L. R. 36 Ch. Div. 25; *Loring* v. *Salisbury Mills*, 125 Mass. 138.

*Francis W. Miner & William C. Roelker*, for respondent, the Providence Gas Company.

*February* 24, 1891. MATTESON, J. This is a bill in equity brought by the complainants, who are the children of Allen O. Peck, deceased, and residuary legatees under his will, against their mother, Mary E. Peck, Benjamin W. Smith, her assignee, for the benefit of creditors, and the Providence Gas Company. By it the complainants seek to compel the Providence Gas Company to reinstate them in the title to one hundred and thirty shares of the capital stock of that company, or to reimburse them for its loss. The cause was heard on bill, answers, and an agreed statement of facts. The case, as it appeared upon the hearing, is as follows, viz.: Allen O. Peck died September 15, 1871, leaving a last will and testament, the residuary clause in which is as follows, to wit: " I give, devise, and bequeath all the residue and remainder of my estate of all kinds to my children, share and share alike, to have and to hold the same to them and their respective heirs, subject, however, to the following provision for my wife, Mary Elizabeth Peck: in lieu of her dower in my said estate, my said wife may

use, occupy, and enjoy such parts of my estate as she may at any time elect for the residence of herself and my children, and the income of all other parts of my said estate for the use and benefit of herself and my children during her life, and until the day of her marriage; but from the day of her marriage, and for the remainder of her life, she may have only the use and income of one half of my estate, including such part thereof as she may select for her residence and the household furniture." The will also contained the following power, to wit: "My executrix is authorized to sell such part of my estate as she may judge necessary or desirable for the security of the same, and to reinvest the same according to her discretion." This will was duly proved in the Municipal Court in Providence, and Mary E. Peck, named therein as executrix, qualified herself to act, administered the estate, and filed two accounts of her dealings with it, the latter of which was allowed by the court August 18, 1874. By this account it appeared that there were remaining in her hands as executrix on July 30, 1874, the date of the account, besides other property, one hundred and sixty shares of the capital stock of the Providence Gas Company, which shares also stood at the date named on the books of that company in the name of the estate of Allen O. Peck. The gas company was not aware of the contents of the will, except in so far as it was chargeable with constructive notice from the record of it, at the dates of the transfers of its stock complained of, but were notified of the decease of the testator soon after it occurred, and that the respondent, Mary E. Peck, had been appointed executrix of his estate. It allowed one hundred and thirty of said one hundred and sixty shares to be transferred by one Henry C. Whitaker, the brother of said Mary E. Peck, acting under a power of attorney given to him by her, as follows, to wit: July 30, 1878, sixty shares to the National Exchange Bank; May 10, 1882, twenty-five shares to C. E. Lapham, Cashier; September 7, 1883, twenty shares to C. F. Sampson, Cashier; December 8, 1883, twenty-five shares to C. F. Sampson, Cashier; and also issued to each of the transferees of said shares memorandum certificates of the shares transferred. All of the shares so transferred were in fact pledged to the transferees, and in January, 1885, all of them were allowed by the gas company to be re-transferred to the

said Mary E. Peck, individually.    Subsequently, from time to time, they were transferred by said Whitaker, under powers of attorney given to him by said Mary E. Peck, until at the time of his death seventy were held by one bank and sixty by another, in pledge, and have since been sold by the pledgees to satisfy the debts for which they were pledged.    It was agreed that said Mary E. Peck would testify that she gave the powers of attorney to said Whitaker, through being misled by him and being ignorant of business matters ; that neither she, nor the estate of Allen O. Peck, had any of the proceeds of the stocks pledged ; that the complainants would testify that they had no knowledge of the transactions narrated until the death of Whitaker ; that the gas company would testify that it had no knowledge of any imposition practiced upon said Mary E. Peck by said Whitaker, and allowed the transfers of the stock to be made with no other notice than that implied by the acts of transfer and the parties.    The said Mary E. Peck was at all times, from 1868 down to 1888, a considerable owner of stock in the respondent gas company in her own right, and frequent transfers of such stock to and from her were from time to time made, and she was possessed, during the period mentioned, of means of her own outside of her interest in the estate of the testator, as the respondent gas company knew.

It may be regarded as well settled by the authorities that a corporation in relation to its stock stands upon the footing of a trustee towards its stockholders, and is bound to exercise reasonable care and diligence in protecting the title of an equitable or beneficial owner of its stock against an unauthorized transfer.    Before permitting a transfer to be made, it may, therefore, require the production of authority to make it, and may permit, or refuse to permit, the transfer according as the authority is, or is not, sufficient. Being thus bound to the exercise of care and diligence, and having the right to require the production of authority to make a transfer, it follows that, if there be anything in the circumstances attending the proposed transfer which ought to excite suspicion in the mind of the officer of the corporation supervising the transfer, or, in other words, to put him upon inquiry into the authority to make it, he is bound to make that inquiry, and the corporation whose agent he is, is chargeable with notice of what such inquiry,

reasonably prosecuted, would have disclosed, and that if loss results to the equitable owner of the stock from a failure to make such inquiry, the corporation must make good the loss sustained. *Lowry* v. *The Commercial & Farmers' Bank of Baltimore*, Taney's Circuit Ct. Decis. 310; 3 Amer. Law Journal N. S. 111; *Bayard* v. *Farmers' & Mechanics' Bank*, 52 Pa. St. 232; *Stewart & Duffy, Trustees*, v. *Firemen's Insur. Co.* 53 Md. 564; *Covington* v. *Anderson*, 16 Lea, Tenn. 310; *Caulkins* v. *Gas Light Co.* 85 Tenn. 683; *Peck* v. *Bank of America*, 16 R. I. 710; *Hill* v. *Simpson*, 7 Vesey Jun. 152.

The case shows that Allen O. Peck died September 15, 1871; that the executrix settled her second account August 18, 1874; that the first of the transfers of the one hundred and thirty shares was made July 30, 1878, the second, May 10, 1882, the third, September 7, 1883, and the fourth, December 8, 1883. The fact that these transfers were proposed to be made by an executrix was notice to the respondent company of the existence of the will, and the fact that nearly seven years had elapsed, prior to the first of such transfers, since the death of the testator, three years being the period limited by law for the settlement of the estates of deceased persons, was notice that such transfer was probably not in the ordinary course of administration for the purpose of raising money for the payment of debts or legacies. The respondent company, must, therefore, be held chargeable with notice of the will and its contents when it permitted the transfers to be made, and with notice that they were not in the ordinary course of administration. An examination of the will, however, would have disclosed to the officer of the company the fact that the executrix was authorized to sell such part of the testator's estate as she should judge necessary or desirable for the security of the same, and to reinvest the same according to her discretion. The respondent company would, therefore, be justified, nothing else appearing to put it upon inquiry, in permitting a transfer or transfers in pursuance of a sale or sales by the executrix. The question then comes down to this, was there anything in either of the transfers under consideration which ought to have raised a suspicion in the mind of the officer of the respondent company supervising the transfers, that the transfer was unauthorized, or in fraud of the

rights of the complainants as residuary legatees of the stock under the will. The complainants' counsel contends that there was; that the fact that the first of these transfers was to a bank and the other three were to cashiers of banks was strong constructive, if not actual notice, that these transfers were by way of pledges of the stock and not sales, and that the executrix had no authority under the will to pledge the stock. Although it may be, as contended by the counsel for the gas company, that an executor has authority in the ordinary course of administration to pledge as well as sell the assets, we think that in a case like the present, the duties of administration having been completed, the executrix, though nowhere named as trustee in the will, must, nevertheless, in view of the duties remaining to be performed under the will, be deemed to have held the stock rather as a trustee than as executrix. *Peck* v. *Smith*, 16 R. I. 260; *Pomroy* v. *Lewis*, 14 R. I. 349; and that as such, in the absence of authority conferred upon her by the will, she had no power to pledge the stock. We do not think, however, that the fact that these transfers were to a bank and to bank cashiers was sufficient to charge the gas company with notice that such transfers were pledges *by the trustee* and not *sales by her* to other persons. The suggestion that these transfers, being to a bank and to bank cashiers, were notice to the gas company that they were pledges of the stock and not sales is based upon the idea that the business of a bank is to loan money, and to take stocks as security rather than to purchase them; but though this is doubtless true, it by no means follows that a bank may not sometimes invest its funds in the stock of other corporations. Be this as it may, however, it is a matter of every-day knowledge, or if not, it is easily conceivable that a purchaser of stock, not having sufficient funds to pay for it, may borrow money of a bank or others for that purpose, and that in such a case the seller of the stock may transfer it as security, by a transfer absolute on its face, directly to the lender of the money instead of the purchaser. For aught that appeared to the officers of the gas company, so far as the case shows, this might have been the nature of the transaction in the case of each of the transfers in question. This being so, there was nothing which ought necessarily to have led them to suspect that such transfers were not in pursuance of sales made by

the executrix under the power in the will, and, therefore, had they made inquiry into her authority, we do not think they would have been bound to go farther in their inquiry than to the will. It results that the company is not to be held liable for their failure to make inquiry, since, if the inquiry had been made, it does not appear that it would have disclosed the want of authority, and thereby prevented the loss which has been sustained.

The complainants contend that it was a wrong to them for the gas company to permit the stock to be re-transferred by the pledgees to the respondent, Mary E. Peck, individually, instead of requiring it to be transferred to her as executrix. The case shows that Mary E. Peck was, to the knowledge of the company, possessed of considerable means outside of her interest in the estate of the testator, and that transfers of stock to and from her had been frequently made during the whole period covered by the transactions in question. In this state of facts, unless it be conceded that the company ought to have known that the original transfers by her were pledges instead of sales, we do not see how it can be claimed that it was negligent in permitting the stock to be transferred to her individually, as it would any other stock which she had purchased.

Our conclusion is, that the bill should be dismissed, with costs.

The complainants then filed a petition for leave to reargue the case.

*January* 23, 1892. TILLINGHAST, J. We are asked by the complainants to reconsider our opinion previously delivered in this case, on the ground that it is in conflict with the well-settled rule of law in such cases, in that the rule which we adopted in determining the question of the liability of the respondent corporation, in permitting a registry of the transfer of the stock in question to be made upon its books, fails to secure to the *cestui que trustent* the amount of protection to which they are legally entitled.

The contention is, that the respondents, being charged with a knowledge of the trust, and the transfers of stock being in such form that the transaction might be either a pledge or a sale, that is, that the transaction *might* be one, permitted by the will of Allen O. Peck, or in fraud of that instrument, it was incumbent on the respondents to make that investigation.

In other words, the contention is, that the respondents were in the position of trustees for the complainants, and *as* such were under obligations to resolve all doubts before permitting the transfers to be made.

Briefly stated, the case is this : —

A. holds stock in trust for B., with power to sell the same in his discretion, for other security.

C. is the custodian of the stock, with knowledge of A.'s trust, and also of his power to sell.

C. permits A. by his lawfully constituted attorney D. to transfer a part of the stock on the books of the corporation to E., a national bank, and another part to F., " cashier."

The transfers were in fact by way of pledge, to secure the individual indebtedness of the said attorney D., and were made without authority, and in fraud of the rights of B.

C. had no knowledge of the wrongful act of A.'s attorney, except in so far as such knowledge is to be imputed to him from the fact that he knew that A. held the stock in the manner aforesaid.

Under these circumstances, was C. guilty of negligence in permitting the transfers to be made ?

It is doubtless a well-settled rule of law, that a corporation occupies, in many respects at least, the position of a trustee towards its stockholders ; that it is bound to exercise reasonable diligence in protecting the title of a beneficial owner of stock; and that it is responsible for any injury sustained by such beneficial owner through its negligence or misconduct.   *Caulkins* v. *Gas Light Company*, 85 Tenn. 683 ; 19 Amer. & Eng. Corp. Cas. 400 ; Perry on Trusts, § 242; *Loring* v. *Salisbury Mills*, 125 Mass. 138, 150 ; *Shaw* v. *Spencer*, 100 Mass. 382 ; *Duncan* v. *Jaudon*, 15 Wall. 165 ; Morawitz on Corporations, § 181.   See, also, the rule as laid down by this court in *Peck* v. *Bank of America*, 16 R. I. 710, 713.

The real difficulty in cases of this sort, however, is not in laying down the general rule to be applied, this being so well established as hardly to admit of a discussion, but in applying that rule to the facts of the particular case in hand.   In this case, the important question which arises is as to how far it was the duty of the transfer agent to inquire into the authority of the trustee to make the

transfer.  The gas company had notice in law of the provisions of the will of Allen O. Peck.  It knew, therefore, that the executrix had the power to sell the stock in question.

Henry C. Whitaker, her lawfully constituted agent, who was also her brother, requested that the said stock should be transferred on the books of the corporation, to other parties, which request was granted.  As he had the right to sell the stock, and did not have the right to make any other disposition thereof, was not the transfer agent of the gas company warranted in assuming that the transaction was a sale, and not a pledge?  Or, to state the question differently, was there anything in such a transaction that would lead an ordinarily prudent man to suspect that any wrong was being committed?

We think not.

It is to be presumed that men are honest in their business transactions, until the contrary appears, or at any rate, until or unless something appears which would put an ordinarily prudent man upon his inquiry in relation thereto.

Almost all commercial transactions are necessarily based upon this theory.  And when one proposes to do an act which is apparently rightful, although it may possibly be wrongful, the one with whom he is dealing has the right to presume that it is rightful. " *Omnia rite esse acta.*"  Broom's Legal Maxims, *731 ; *Hatch* v. *Bayley,* 12 Cush. 27 ; *Carter* v. *Nat. Bank of Lewiston,* 71 Me. 448, 454.

In Wharton on Evidence, § 1249, this doctrine is stated as follows : " When an instrument is susceptible of two conflicting probable constructions, the court will adopt that construction which is most consistent with good faith, and will hold that such construction was intended by the parties.  And this rule of construction applies to cases where an act or fact is fairly susceptible of two interpretations, one lawful and the other unlawful."

Applying this principle to the case at bar, we think that the respondent corporation had the right to presume that the transfers of the stock in question were made in pursuance of the authority contained in the aforesaid will, and not in fraud thereof.

The respondents, however, seem to contend for the reverse of this doctrine.  For they say : " It is not enough that the transaction

*may be* legitimate. To adopt such a rule would be to permit corporations to be parties to any kind of an operation, provided only they could imagine circumstances under which that operation might be permissible."

That is to say, if we rightly understand the contention, it is that, under the circumstances attending the transfers of stock in this case, it is apparently probable that the acts were wrongful and fraudulent, and only barely possible that they might have been honest and rightful.

Such a position is not well founded either in principle or authority. It is contrary to the well-established maxims of law, and the ethics of commercial transactions.

But assuming that we have stated the position of the complainants too strongly, and they intend only to take the more conservative ground, that the transfers of stock which the gas company permitted to be made might as well have been wrongful as rightful under the circumstances surrounding the transfer, yet we do not think that *this* position is tenable. We cannot agree to the proposition that, on the face of the transaction, there was as much to show that it was wrongful as there was to show that it was rightful. The power of the trustee to sell the stock, coupled with the presumption that she was acting honestly, and in pursuance of that power, made the transfer apparently rightful, or at any rate, the act under the circumstances was not such as ought to cause a reasonably prudent man to suspect that it was wrongful. Ordinary diligence, and not suspicious watchfulness, is the measure of duty which a corporation owes to its stockholders in such cases.

In this case we do not see that there was either suggestion of danger or ground for suspicion.

But the complainants further contend that the fact that the transferees of the stock were all either National Banks, or the cashiers of such banks in their official capacity, clearly indicated that a pledge, and not a sale, was contemplated by the transferrer, as such banks have no power to purchase shares in other corporations. The same position was strenuously urged at the former hearing, and is fully considered by the court in its opinion.

We see no occasion to modify the views therein expressed.

An examination of the cases relied on by the complainants in

support of their petition for reargument, fails to satisfy us that they are in conflict with the decision previously rendered in this case. We will briefly consider them.

*Loring* v. *Salisbury Mills*, 125 Mass. 138, was a case where the defendant corporation had notice that the shares of stock in question were held by George H. Rogers, trustee for Mrs. E. B. Mountford. By the indenture of trust the trustee was authorized to sell and reinvest the trust property only upon first obtaining the written consent of the *cestui que trust*, if at the time within the United States, and the evidence showed that she was within the United States at the times of the sales and transfers complained of. It was held, that the transfers having been made without due inquiry into the authority of Rogers, the trustee, to make them, and being invalid against the *cestui que trust*, the defendant was liable.

An examination of the powers of the trustee in that case would have revealed the fact that he had no authority to transfer the stock without the written assent of his *cestui que trust*. Failing to make this inquiry, the defendant was clearly guilty of negligence.

*Bohlen's Estate*, 75 Pa. St. 304, was a case where the executors of a will, who were also trustees thereunder, had power in their discretion to sell the real estate, but had no power, in terms, to transfer stocks. They did not sell the stock which the testator owned at his decease, it not being needed for the purposes of administration, but retained it unconverted, and it passed into and formed a part of the trust estate. The defendant had express notice that the stock was held by trustees, as the trust appeared on the certificates and on the transfer-books of the corporation. After the death of the trustees named in the will, the Orphan's Court appointed others in their place, and the stock was duly transferred to them in their said capacity. The defendant afterwards permitted one of said trustees, who acted for himself, and also for the other under a power of attorney which gave full discretionary power in the premises, to transfer said stock. He converted the proceeds to his own use and absconded. It was held, that the successors of the trustees named in the will possessed only such powers as they derived from the will, or were incidental to the

office of trustee in the management of the trust estate. And also, that a delegation of discretionary power from one trustee to his cotrustee could not be legally made; and consequently that the sales of the stock were invalid, and the defendant liable.

*Mechanics' Bank of Alexandria* v. *Seton*, 1 Peters, 299, was a case to compel the appellant to permit a transfer of three thousand dollars of the capital stock of the bank standing in the name of Adam Lynn, and held by him as trustee of the appellees. The bank refused to make the transfer, on the grounds that Lynn was indebted to it for loans made to him, and that under the charter of the bank, it had the right to hold said stock for the payment of his debt. The proof showed that the board of directors had full knowledge that the stock was not the property of said Lynn, but was held by him in trust for the complainants when they permitted it to be transferred. *Held*, that the bank was liable. The court said, p. 309: "It is a well settled rule in equity that all persons coming into possession of trust property with notice of the trust shall be considered as trustees, and bound with respect to that special property to the execution of the trust. 2 Madd. Ch. 125; 1 Sch. & Lef. 263."

In *Sweeney* v. *Bank of Montreal*, 12 Canada Sup. Ct. 661, stock standing in the name of "A. B. in trust," without any power of sale, or any evidence for whom or upon what trust, was, by A. B., transferred as collateral security for his own individual debt to the bank of Montreal, which had notice how the stock stood on the record. It was *held*, that the transfer was *primâ facie* suspicious and a breach of trust, and such as should have put the bank upon its inquiry. This decision is in accord with the current of American authorities upon the question there considered.

*Caulkins* v. *Gas Light Company*, 85 Tenn. 683, was a case where the will creating the trust gave the trustee no power of sale. The defendant, with full knowledge of the contents of the will, whereby it appeared that the trustee was only entitled to the income of the stock during his life, nevertheless permitted him to sell and transfer the same absolutely to a purchaser in good faith, for value and without notice. It was *held*, that the company was liable to the *cestui que trust*. A careful examination of the facts

in that case shows that it was one of inexcusable negligence on the part of the defendant.

*Bayard* v. *The Farmers' and Mechanics' Bank,* 52 Pa. St. 232, was a case where the defendants, as agents of the commonwealth, issued to Henry D. Gilpin, trustee, certificates of certain stock, and also to Henry D. Gilpin, trustee of Mary Gilpin, certificates of certain stock. Mr. Gilpin having deceased, and Thomas F. Bayard having been appointed trustee of Mary Gilpin, the executors of Mr. Gilpin transferred all of said stock to him as "trustee of Mary Gilpin," and certificates therefor were issued by the defendants to "Thomas F. Bayard, trustee of Mary Gilpin." Mary Gilpin afterwards died, leaving a will. After her death Mr. Bayard, as trustee, sold $4,000 of the stock, and authorized its transfer to his vendee. The defendants, on demand, refused to permit the transfer until the terms of the trust were submitted to their attorney, and he should be satisfied that the sale was made in due execution of the trust. It was *held,* that the plaintiff had no right to insist upon being allowed to make a transfer of stock which he held ostensibly in trust for Mary Gilpin, without exhibiting to the defendants an authority to transfer beyond the certificate. The court laid down the following rule, p. 235 : " That a bank or other corporation, and also these defendants, are trustees to a certain extent for stockholders, that is, for the protection of individual interests, cannot be denied. They are alike trustees of the property, and of the title of each owner. They have in their keeping the primary evidence of title, and they are justly held to proper diligence and care in its preservation. From this it results that they may rightfully demand evidence of authority to make a transfer before they permit it to be made. Their own safety requires that they be satisfied of the right of the person proposing to make a transfer to do what he proposes."

*Mobile & O. Ry. Co.* v. *Humphries,* 7 Southern Reporter, 522, was a case where an executor transferred stock belonging to the estate, after he had been removed by the court from his office as executor. It was *held,* that he had no power to sell the stock, after his removal, and hence that the defendant railroad company was liable for its wrongful transfer.

*Marbury, Trustee,* v. *Ehlen et al.* 72 Md. 206 ; 19 Atlantic

Reporter, 648, was a case where stock standing in the name of a trustee was permitted to be transferred, with constructive knowledge on the part of the defendant corporation, of the will under which the stock was held in trust, and also with knowledge that the trustee could not transfer the same without an order of court. It was *held,* that the defendants, having permitted the transfer to be made without an order of court, were liable.

In *Colonial Bank* v. *Cady,* L. R. 15 App. Cas. 267 ; 30 Amer. & Eng. Corp. Cas. 73, the stock in question stood in the name of one Williams.   After his death, his executors signed a transfer in blank, on the back of the certificates, for the purpose of having the stock transferred into their names as executors, and handed them to their London brokers to send to the company in New York. Blakeway, one of the brokers, fraudulently used the certificates as collateral security for loans made to his firm.   The evidence offered in the case showed that the certificates were not " in order," and would not, according to the rules of the New York Stock Exchange, pass from hand to hand.   The evidence also showed that the certificates as indorsed would not be accepted in delivery on the London Stock Exchange.   It was *held,* that the act of the executors did not necessarily imply an intent on their part to transfer the stock to anybody else, but was entirely consistent with their actual intention to transfer it into their own names.

Lord Halsbury, L. C. 15 App. Cas. 273, in the course of his opinion said :   " Now the form of the certificates, and of that which is intended to be used as a transfer, when a registered owner makes the transfer, appears to me to be all important.   I have intentionally, in what I have said before, refused to adopt the phrase used at the bar, ' that the executors executed the transfer.'   The document, such as it is, with the names of the two executors subscribed, will not read so as to be a perfect and intelligible document.   The person who begins by describing himself as the owner of the shares, is not the person who signs ; and as Lindley, L. J., very pertinently inquires :   ' What is it that the executors have done ?   What representation have they made, which they are precluded from denying or explaining away ? '   The mere form of the document which they have signed certainly does not in itself purport to show that they are intending to give a complete title

to anybody.   But undoubtedly a document made by usage becomes so well understood in a particular sense, that a person may be well estopped from denying that when he issues it to the world it must bear the sense which usage has attached to it.   And that brings one to inquire whether it is true that the issue of this document to the world in this form would show that the person signing had intended to give a complete title to any one into whose hands it should come.   To my mind the evidence shows beyond doubt, that the document might mean at least one of two things, either that the executors were going to sell these shares and transfer them to some one else, or that they were signing in order that they might be themselves registered in the books of the company as the legal representatives of the deceased John Michael Williams.   Now if that is all that the document upon the face of it represents, and I cannot doubt that, when all the evidence is looked to, that is not an unfavorable mode of representing it towards the appellants, let us see what would have been the result if Blakeway, instead of simply tendering the document as security for a loan to himself, had said in plain terms to the bank what I have described as being the representation made by the document itself: 'I tell you' — the bank — 'I have been intrusted with these certificates for only one of two purposes, but I will not explain which, either to sell or get the names of the owners of them registered in the books of the company.'

"Can there be any difference between that which is stated in plain terms, and that which, as a matter of business, ought to have been inferred from the nature of the document itself?   I think none."

We have quoted thus at length from this case because of its high authority, and also because it was much relied on in argument by the counsel for the complainants in support of his position. We are unable, however, to agree with him in his deductions therefrom.

The form of the certificates themselves in that case was evidently sufficient to have put the defendant bank upon its inquiry as to the authority of the holder to negotiate them.   It appeared thereon that they were "transferable in person or by attorney on the books of the company, *only on the surrender and cancellation*

*of this certificate by an indorsement thereof hereon,* and in the form and manner which may at the time be required by the transfer regulations of the company."

Mere delivery of these certificates with the indorsement of the executors thereon did not invest the holder with the ownership thereof, in the sense that no further act was required to perfect his right, the transferrers not being named in the certificate and not being the registered owners of the shares.   And as stated by Lord Watson in giving his opinion in the case, 15 App. Cas. 279: " Whatever may be the effect of any instrument so executed, one thing is clear, that it cannot be regarded as either in law or by custom equivalent to a certificate and transfer executed by the registered owner himself. . . . Although registration may be obtained upon the production of such evidence, the documents are not ' in order,' or, in other words, are not accepted in commercial circles as sufficient vouchers of title, unless they are accompanied by an extract of the probate, and an attestation of the genuineness of the executors' signatures by the United States Consul or other competent officer."   Out of five officials of London Banks who were examined for the appellants, not one was able to give an instance of a transfer signed by executors having been taken as security, except in that case.

We do not see how the case can be considered an authority in support of the complainant's position.

*Lowry* v. *Commercial & Farmers' Bank of Baltimore,* Taney's Ct. Ct. Decis. 310, is a leading case on the subject under consideration.   In that case the stock in question had been specifically bequeathed upon certain expressed trusts, and there was no power to sell it, except for the purpose of paying the debts of the testator.   Eight years after the death of the testator, Samuel Jones, one of the executors, transferred the stock for his own personal use, of which fact the court found, from the circumstances of the case, the bank had notice, and it was therefore held liable.

*Magnus* v. *Queensland National Bank,* L. R. 36 Ch. Div. 25, was a case where certain trustees transferred stock to the defendant bank as security for a loan.   The loan having been paid, the bank instead of retransferring it to the mortgagors, the trustees, transferred it to a third party, a nominee of one of the trustees, whereby it became lost to the trust.

It was held, that the mortgagee whose debt has been paid holds the property in trust to reconvey to the mortgagor. The bank, having failed to so reconvey, was liable.

In that case, therefore, the opportunity of acting dishonestly on the part of one of the trustees, of which he availed himself, was given to him by the breach of duty of the bank.

In *Taft* v. *Presidio, etc. R. R. Co.* 84 Cal. 131, the decision turns entirely upon the construction of the power of attorney, under which the stock was transferred.

The court decided that the power of attorney did not authorize the stock to be transferred in the manner and form in which it was transferred, and furthermore that it was not transferred in accordance with the by-laws of the defendant corporation, nor of the provisions of the civil code of the State.

*Chew & Goldsborough* v. *The Bank of Baltimore,* 14 Md. 299, 318, was a case where the bank transferred stock under a power of attorney from a person who was insane. It was *held, First.* That a power of attorney given by a lunatic is void. *Second.* That a bank, transferring stock under a power of attorney, takes the risk of its being valid. If the power of attorney is void for any cause (*e. g.*, if it be forged, or given by a *feme covert,* infant, or lunatic) the bank is responsible. *Third.* The fact that it did not know that the power was void cannot help it. It may refuse to recognize the power.

Owing to the importance of the question involved in this case, especially to the complainants, and the commendable diligence and zeal displayed by counsel in the trial thereof, we have thus carefully reviewed our former decision together with the authorities cited in opposition thereto. But we are unable to arrive at any different conclusion from that therein announced.

In our investigation we have not been unmindful of the fact that the law strives, as far as possible, to protect the interests of the *cestuis que trustent.  Smith* v. *Ayer,* 101 U. S. 320, 327 ; *Colt* v. *Lasnier,* 9 Cow. 320, 442 ; *Collenson* v. *Lister,* 7 DeG., M. & G. 634, 637. But while this is so, it never visits the sins of a wrong-doer upon one who is innocent, in order to find a remedy. That a great wrong has been committed against the complainants,

in this case, is clearly manifest. But the sole author of that wrong is now beyond the reach of human tribunals.

*Petition for reargument denied and dismissed, and former decision affirmed.*