## CLARK & WILSON LUMBER CO. OF DELAWARE v. McALLISTER.

### No. 8830.

Circuit Court of Appeals, Ninth Circuit.

Feb. 14, 1939.

MATHEWS, Circuit Judge, dissenting in part.

Charles A. Hart, of Portland, Or. (Carey, Hart, Spencer & McCulloch, of Portland, Or., of counsel), for Clark & Wilson Lumber Co.

Sidney Teiser and Teiser & Keller, all of Portland, Or., for S. A. McAllister, receiver.

Before DENMAN, MATHEWS, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

As receiver of Nehalem Timber & Logging Company, an Oregon corporation (hereafter called Nehalem), S. A. McAllister, a citizen of Oregon (hereafter called plaintiff), brought this action against Clark & Wilson Lumber Company of Delaware, a Delaware corporation (hereafter called defendant), to recover damages in the sum of $510,000, with interest, for alleged conversions of shares of defendant's capital stock belonging to Nehalem. From a judgment in plaintiff's favor for $145,000, with interest, both parties have appealed.

Nehalem was organized in 1905 and, until 1927, was engaged in the timber and logging business in Oregon. It was one of a group of six affiliated corporations (hereafter called the Nehalem group) of which, at all pertinent times, Henry Turrish was the executive head and largest individual stockholder. Turrish was president and A. J. Keith was secretary and treasurer of Nehalem. Both were members of its board of directors.[1]

In 1927 the Nehalem group of corporations conveyed their property and assets to defendant in exchange for 50,000 shares of defendant's capital stock,[2] of which Nehalem received, for its property and assets, 17,735 shares. Thereafter, between March 3, 1928, and February 18, 1931, Turrish caused 3,400 of these shares to be transferred on defendant's books and new certificates therefor to be issued by defendant, as follows: To Turrish himself, 1,850 shares; to his wife, Minnie L. Turrish, 250 shares; to A. J. Keith, 525 shares; and to A. J. Keith's brother, T. B. Keith, 775 shares. The transfers were procured by surrendering to defendant stock certificates theretofore issued to Nehalem, each certificate having endorsed on it an assignment executed in the name of Nehalem by Turrish as its president.

On September 28, 1933, plaintiff was appointed receiver of Nehalem and on March 3, 1934 commenced this action, alleging that the transfers to the Turrishes and Keiths were unauthorized; that defendant, in making and permitting the transfers, had converted the 3,400 shares to its own use; and that Nehalem was thereby damaged in a sum equal to the market value of the shares, which, plaintiff alleged, was $510,000. Answering, defendants denied that the transfers were unauthorized, alleged that they were duly authorized, and denied that the shares had been converted.

By stipulation of the parties, jury trial was waived, and pursuant to Oregon Code, 1930, §§ 2-601 to 2-609,[3] the issues were referred to a referee, who, after hearing the case, filed his report and, with it, the evidence taken by him at such hearing. Thereafter, the case came on for trial by the court and was submitted to the court

---

[1] Nehalem's bylaws provide that, at the annual meeting of its stockholders in January of each year, a board of five directors shall be elected; that the directors shall, at their first meeting, elect a president, vice president, secretary, assistant secretary, treasurer and general manager; that the president and vice president must be members of the board of directors; that the president shall preside at all meetings of directors and stockholders; that the directors may delegate to any one of their number any power not expressly required by law to be exercised by the whole board; that they shall exercise a general supervision over the officers of the company; that they may appoint such agents as they deem necessary, define their respective duties and remove or suspend them at their pleasure; and that the general manager shall be the company's general agent and shall have personal supervision, control and direction of its business affairs, subject at all times to the direction and control of the board of directors.

[2] In the record, this transaction is referred to as a merger. It was a merger of assets only. There was no merger of corporations.

[3] Section 2-601 provides: "All or any of the issues in the action, whether of fact or law, or both, may be referred upon the written consent of the parties." Sections 2-602 to 2-609 prescribe the procedure to be followed after reference.

on the evidence taken by the referee. Plaintiff requested the court to find that Turrish had no authority to make any of the transfers in question. This request was denied, and plaintiff excepted. Defendant requested the court (1) to find as a fact, and to hold as a matter of law, that Turrish had authority to make all the transfers, and that none of them constituted a conversion, and (2) to enter a judgment in its favor. These requests were denied, and defendant excepted. The court made findings of fact reading, in part, as follows:[4]

"(3) Turrish was the largest individual stockholder in [the Nehalem] group of companies; he was also the executive head of each of them and by the consent or acquiescence of the other stockholders exercised managerial authority over all of the affiliated companies and controlled their policies. * * * The General Manager of the Nehalem took his directions from Turrish * * *. For many years prior to the merger of 1927, meetings of the stockholders and of the board of directors of the Nehalem were held infrequently from time to time when it became necessary to take formal corporate action in transactions wherein the submission of corporate minutes or resolutions was required by other interested parties. But, aside from these occasions, there were few meetings of the board of directors of the Nehalem during a long period of pre-merger years when the Nehalem was transacting a gross business in the neighborhood of a million dollars a year * * *. [By] consent and acquiescence of the stockholders and directors of the Nehalem during those years, Turrish actually exercised, in the general administration of the affairs of the Nehalem, substantially the whole of the power vested in its board of directors. This exercise of authority by Turrish was never questioned by any Nehalem stockholder or director so long as Nehalem was a going concern."

"(7) After the merger, the Nehalem Company ceased its logging operations and related activities and held no assets of any consequence except its Delaware stock.[5] The Nehalem had some indebtedness to pay, certain adjustments to be made arising out of the merger and other contracts,

and some related and incidental matters to be taken care of looking toward the winding up of its affairs. Such business as was transacted by it during that period was directed and handled by Turrish. No recorded meeting of either the stockholders or the directors of the Nehalem was held between December 16, 1927 and February 18, 1931. It was during this period that the stock transfers in question took place."

"(9) * * * During that same period of time, a substantial number of other transfers, not directly involved here, were made. The record does not show that any director or stockholder of the Nehalem company ever questioned any of the transfers mentioned (meaning both those which are the subject of this action and those that are not) until more than a year after February 18, 1931, the date of the last transfer involved here. A considerable proportion of those transfers, if not all of them, were made on the authority of Turrish's endorsement, although none of them were authorized by resolution or other formal action of the board of directors."

"(12) Through continuous, unchallenged and open exercise by Turrish of control of the Nehalem's operations and business with the acquiescence of the Nehalem's directors and stockholders, Turrish was clothed with authority to dispose of the personal property of the Nehalem, including its Delaware stock, in the ordinary course of handling the Nehalem's business and affairs. The transfer of stock to Turrish, to Turrish's wife, or to A. J. Keith, was not a transfer of personal property of the Nehalem in the ordinary course of handling the Nehalem's business and affairs. Further, Turrish had no actual or apparent authority, by express designation or otherwise, to transfer stock or any other Nehalem property to himself, or for his benefit, to his wife, or for her benefit, or to A. J. Keith, or for his benefit."

The court concluded that the transfers to T. B. Keith did not constitute conversions by defendant, but that the transfers to the Turrishes and A. J. Keith did constitute such conversions, and, having found that the shares so transferred had a value of $145,000, gave plaintiff a judgment for

---

[4] The findings are in subdivisions numbered from I to XX, inclusive. Findings (3), (7), (9) and (12), quoted above, are in subdivision XVII.

[5] In the findings, defendant is called the Delaware corporation, and its stock is called Delaware stock.

that amount, with interest. These appeals followed.

On plaintiff's appeal, the question is whether the evidence warranted a finding that Turrish had authority, actual or ostensible, to make the transfers to T. B. Keith. On defendant's appeal, the question is whether the evidence required a finding that Turrish had authority to make the transfers to himself, his wife and A. J. Keith.

█ A preliminary question is involved. Defendant says there is no evidence that the shares were misappropriated by the Turrishes or Keiths, or that, apart from the question of Turrish's authority, the challenged transfers were in any respect wrongful or improper. It is true no witness so testified, but defendant's counsel at the hearing before the referee made an opening statement which cannot be read otherwise than as a concession that the transfers to these persons were in fact misappropriations of Nehalem's property. The admission is binding on defendant. Oscanyan v. Winchester Repeating Arms Co., 103 U.S. 261, 263, 26 L.Ed. 539; Harniska v. Dolph, 9 Cir., 133 F. 158, 159.

█ The court found that, through long acquiescence, Turrish was clothed with authority to dispose of Nehalem's personal property, including the stock in question, in the ordinary course of handling the Nehalem's business and affairs. This and the further finding that the transfers to Turrish and his wife, and to A. J. Keith, were not authorized, and were not transfers in the ordinary course, are supported by the evidence. It is the rule in Oregon[6] that contracts entered into by corporate directors with themselves as individuals are voidable at the option of the corporation or the stockholders. In Stanley v. Luse, 36 Or. 25, 32, 58 P. 75, 77, where the acquisition of corporate property by a director was set aside, it was said: "The relation which a director sustains towards the corporation he represents is well understood. His position is of a fiduciary character, and his relationship is that of a quasi trustee. Hence it is sometimes asserted that as an individual he cannot deal with the board of directors or trustees of which he is a member; or, in other words, he cannot deal in such a capacity with the corporation of which he is a trustee.

Giving the doctrine its broadest scope, it is said: 'A person cannot legally purchase on his own account that which his duty or trust requires him to sell on account of another, nor purchase on account of another that which he sells on his own account;' and 'especially is this the rule with corporate directors.' 2 Cook, Corp. § 652. Such is undoubtedly the necessary result where a majority of the directors have so dealt with themselves as individuals, or wherein the acts of such majority have been controlled by the individual director dealing with the corporation. Coleman v. Railroad Co., 38 N.Y. 201. This does not absolutely preclude an interested director, however, from dealing or contracting with his corporation, but only from dealing in his official or representative capacity, without special authority, where his individual interests are involved."

While enunciating the general doctrine found in Stanley v. Luse, supra, the Oregon court in Jones v. Hale, 32 Or. 465, 52 P. 311, had earlier held that where it is shown that an officer acting under special express authority of the stockholders and directors and with their affirmative consent and in the utmost good faith and for full consideration received present security for money loaned, the transactions would not be annulled.

The rule as stated in the Luse case, concerning the need for a *specific* authorization, is the law in many jurisdictions. The Supreme Court of the United States in West St. Louis Savings Bank v. Shawnee County Bank, 95 U.S. 557, 558, 559, 24 L.Ed. 490, holds:

"The testimony in this case satisfies us beyond all doubt that the liability of the Shawnee County Bank, if any liability exists, is that of an accommodation indorser or surety for Parmalee, its Cashier, and that this was known to the St. Louis Bank when it made the discount.

\* \* \* \* \* \*

"Such a transaction would not be within *the scope of his general powers;* and one who accepts an indorsement of that character, if a contest arises, must prove actual authority before he can recover. There are no presumptions in favor of such a delegation of power. The very form of the paper itself carries notice to a purchaser,

---

[6] Since the Nehalem is an Oregon corporation and the misappropriations occurred in that state, the Oregon cases are of controlling authority.

of a possible want of power to make the indorsement, and is sufficient to put him on his guard. If he fails to avail himself of the notice, and obtain the information which is thus suggested to him, it is his own fault, and as against an innocent party he must bear the loss." (Emphasis supplied.)

In each of the following jurisdictions it is held that, although the corporate agent had general power to deal with corporate assets, there must be a special delegation of power specifically authorizing him to deal with them to his personal interest. Germania Safety-Vault & Trust Co. v. Boynton, 6 Cir., 71 F. 797, 798; Mooney v. O. P. Mooney Co., 71 Wash. 258, 263, 128 P. 225, 227; First Nat. Bank of Rice Lake v. Flour City Trunk Co., 118 Minn. 151, 154, 136 N.W. 563, 564.

■ It is a rule of general application that a corporation is custodian of shares of stock transferable only on its books, and is charged with a duty to protect the interests of the owners of the shares against unauthorized transfers. Western Union Telegraph Co. v. Davenport, 97 U.S. 369, 371, 24 L.Ed. 1047; Mackenzie v. Engelhard & Sons Co., 266 U.S. 131, 143, 45 S. Ct. 68, 69 L.Ed. 205, 36 A.L.R. 416; Leurey v. Bank of Baton Rouge, 131 La. 30, 39, 58 So. 1022, AnnCas.1913E, 1168, 1171; 13 Am.Jur., Corporations, § 374. On their face these transfers involved a disposition of Nehalem-owned stock to Turrish and to a fellow director of Nehalem. The transfer to Mrs. Turrish was in the same category as a transfer by Turrish to himself. Defendant was put on notice and it was its duty to investigate whether Turrish had special authority.[7] Had evidence of such authority been insisted upon it is altogether unlikely that the misappropriations could have been effected. Having breached its duty by permitting unauthorized transfers, defendant is liable for the value of the stock. Western Union Telegraph Co. v. Davenport, supra; Mackenzie v. Engelhard & Sons Co., supra.

■ Assuming, without deciding, that the transfers were susceptible of ratification, there is no evidence that they were ever ratified. Nor does the evidence support defendant's claim that Nehalem and its receiver were estopped to deny that Turrish had authority to make the transfers. The claim is based, apparently, on the fact that Nehalem did not question any of the transfers until more than a year after the last one was made. The significance of this fact, if any, would depend on when, if at all, Nehalem obtained knowledge of the transfers. As to that, the record is silent. On the issue of estoppel, defendant had the burden of proof and did not sustain it.

The transfers to T. B. Keith stand on a different footing. As said above, it was found that Turrish was clothed with authority to dispose of Nehalem's Delaware stock in the ordinary course of handling the Nehalem's business and affairs. It is implied, although not expressly stated in the findings, that the transfers to T. B. Keith were in the ordinary course. The determination of the court is that "as between the Nehalem and the Delaware corporation, Henry Turrish as president of the Nehalem, in full and active charge of its affairs, had general authority to make on behalf of the Nehalem any transfer of Nehalem-owned Delaware stock to T. B. Keith, in the ordinary course of handling its business and affairs, but said Turrish had no authority to make any transfer of such stock to himself, to his wife, or to A. J. Keith, or for his or their benefit, or to any officer or director of the company." (Emphasis supplied.)

■ We will not disturb the trial court's determination that the transfers to T. B. Keith involved no breach of duty on defendant's part. He was not an officer or director of Nehalem, but merely a stockholder. The transfers to him, although misappropriations, appeared on the surface to be in the ordinary course of business. Peck v. Providence Gas Co., 17 R.I. 275, 21 A. 543, 23 A. 967, 15 L.R.A. 643. They were thus within the ostensible authority of Turrish. Unlike transfers by corporate directors to themselves, they were not such as to arouse suspicion or invite inquiry. They appeared not to differ from the numerous unquestioned transfers of stock made to others during the period involved.

■ The trial court's finding that the stock transferred to the Turrishes and A. J. Keith had a value of $145,000 was based on conflicting evidence, some of which indicated a higher, some a lower value. Such a finding will not be disturbed

[7] Active diligence on the part of the defendant was rendered even more imperative by the circumstance that both Turrish and A. J. Keith were also directors of the defendant.

on appeal. Jensma v. Sun Life Assurance Co., 9 Cir., 64 F.2d 457, 459.

Judgment affirmed.

MATHEWS, Circuit Judge (dissenting in part).

That Turrish had no express authority to make any of the questioned transfers is conceded. Did he have implied authority? Authority to act for a corporation may be implied from its long continued acquiescence in a course of conduct pursued by an officer or other person assuming to act as its agent. Martin v. Webb, 110 U.S. 7, 14, 3 S.Ct. 428, 28 L.Ed. 49; Calvert v. Idaho Stage Co., 25 Or. 412, 414, 36 P. 24, 25; Neppach v. Oregon & California R. Co., 46 Or. 374, 392, 80 P. 482, 485, 7 Ann.Cas. 1035. Though implied, not express, such authority is actual, not merely apparent. 2 C.J.S., Agency, §§ 91, 99, pp. 1186, 1227.

Here, we have an unchallenged finding[1] that, over a long period of years, including the period of the questioned transfers, Nehalem's business and affairs were handled by Turrish, and that his handling of them was acquiesced in and consented to by Nehalem. There is, however, no finding, nor any evidence which would have warranted a finding, that Nehalem acquiesced in or consented to any act or thing done by Turrish otherwise than in the ordinary course of handling its business and affairs. I conclude, therefore, as did the trial court, that Turrish had implied authority to act for Nehalem, as its agent, and, as such agent, to dispose of its personal property, including its stock in defendant, in the ordinary course of handling its business and affairs, but not otherwise. Turrish's implied authority did not, of course, include any authority to appropriate Nehalem's property to his own use, or to permit others to appropriate it. Wen Kroy Realty Co. v. Public National Bank & Trust Co., 260 N.Y. 84, 183 N.E. 73.

The trial court found that the Turrishes and Keiths did appropriate to their own use the 3,400 shares of stock here involved. Defendant says there is no evidence that the shares were misappropriated. It is true no witness so testified, but defendant's counsel, at the hearing before the referee, made an opening statement reading, in part, as follows:

"I agree with [the plaintiff's counsel] as to the rules of law generally applicable * * * but I think that there is a false premise in its application to the circumstances that will be disclosed by the testimony here. This case, in truth, is not one involving any lack of authority. It is one involving a misuse of authority. There is the essential difference, and I don't think it requires any very thorough analysis or discussion of the rules of law applicable to make clear that that is the situation that we have before us here, and that, in the case of misuse of authority, not lack of authority, there could be no burden placed upon the third party to ascertain, not merely whether there was authority to do this, but whether that authority was being exercised properly or improperly.

"Now we shall treat these transfers of stock as misappropriations by Turrish and Keith, or one or both, or all three of them, as misappropriations. But the precise question upon which any supposed liability of [defendant] turns is whether or not a person endorsing and surrendering certificates for transfer had authority to endorse and surrender those certificates for transfer, and, if so, that is the end of the matter, regardless of any misappropriations which might be accomplished in the exercise of that authority. * * * Now then, if the owner vests general authority in a person, in an agent, to sign for him, and that authority is exercised as given, but a misappropriation undertaken by the agent, that does not affect a third party. * * * All the bylaw does is to give general authority in the president to endorse these documents for transfer purposes, and if, with such authority vested by such a bylaw,[2] the president goes ahead and has the stock transferred to his wife or to anyone else and effects a misappropriation, the company which put that authority in his hands certainly could not undertake to hold the third person who relied upon that authority. * * *

" * * * The case is not one of lack of authority, it is one of misuse of authority."

Thus, it is seen, defendant's counsel admitted that the questioned transfers, each and all of them, were misappropria-

---

[1] Findings (3), (7) and (9), quoted in the main opinion, are not challenged by either party.

[2] There was, in fact, no such bylaw.

tions of Nehalem's property. The admission was and is binding on defendant. Oscanyan v. Winchester Repeating Arms Co., 103 U.S. 261, 263, 26 L.Ed. 539; Harniska v. Dolph, 9 Cir., 133 F. 158, 159. Since, admittedly, they were misappropriations, the transfers were not in the ordinary course of handling Nehalem's business and affairs. I conclude that Turrish had no authority to make any of them, and that the trial court should have so found.

Defendant had the power, and owed Nehalem the duty, to see that no unauthorized transfer of stock owned by Nehalem was made on defendant's books. Having breached that duty by permitting unauthorized transfers of 3,400 shares of Nehalem-owned stock, defendant is liable for the value thereof. Western Union Telegraph Co. v. Davenport, 97 U.S. 369, 371, 24 L.Ed. 1047; Moores v. Citizens' National Bank, 111 U.S. 156, 166, 4 S.Ct. 345, 28 L.Ed. 385; St. Romes v. Levee Steam Cotton Press Co., 127 U.S. 614, 620, 8 S.Ct. 1335, 32 L.Ed. 289; Mackenzie v. Engelhard & Sons Co., 266 U.S. 131, 143, 45 S.Ct. 68, 69 L.Ed. 205, 36 A.L.R. 416.

The judgment, in so far as it awards recovery on account of transfers to the Turrishes and A. J. Keith, should be affirmed. In so far as it denies recovery on account of transfers to T. B. Keith, it should be reversed.