[Civ. No. 3188. Third Appellate District.—February 1, 1927.]

## HARRY D. SKELLENGER, Appellant, v. MARY D. ENGLAND, as Executrix, etc., et al., Respondents.

[1] TRUSTS—GIFTS—LIFE ESTATE—VESTED REMAINDER—EVIDENCE.— In an action to declare a trust in certain real and personal property acquired with money and bonds which plaintiff had transferred to his mother, since deceased, plaintiff's testimony that he gave his mother the moneys and bonds "for her lifetime, and all moneys and all properties left after her life was to revert to me or my heirs," is sufficient to warrant the inference that she was thereby given a life estate in the property, with the right to consume such part of the principal as reasonably might become necessary for her support, and that plaintiff retained a vested remainder in the unused portion thereof.

[2] ID. — SUBSEQUENT ABSOLUTE GIFT — DECLARATIONS OF DONOR. — In such action, the fact that after the making of the original agreement, but before any of the money or bonds had been invested in the real and personal property in suit, plaintiff verbally made an absolute gift thereof to his mother, may be proven by the declarations and admissions of plaintiff; and a re-delivery of the money and bonds to plaintiff was not necessary to a consummation of such gift.

[3] ID.—DECLARATIONS OF DONEE—EVIDENCE—FAILURE TO OBJECT.— In such action, error may not be predicated upon the refusal of the court to strike out testimony of one of the defendants that, at the time the agreement between plaintiff and his mother was burned, the mother said: "I can do anything I please with this money," where no objection was made to the question to which such answer was responsive.

[4] ID.—CLAIM OF OWNERSHIP—DECLARATIONS OF DONEE — WILLS. — The declaration of a donee in possession to the effect that he claims the property by gift is inadmissible as substantive evidence of the gift; but it is admissible as tending to show claim of ownership, or to rebut any inference of an admission against his ownership; and the fact that said donee by her will gives to other than the donor a part of the property in question tends to show that said donee claims absolute ownership of the property.

(1) 21 C. J., p. 940, n. 61, p. 941, n. 87.    (2) 4 C. J., p. 887, n. 61; 21 C. J., p. 1225, n. 35; 28 C. J., p. 638, n. 30, p. 682, n. 7.    (3) 38 Cyc., p. 1406, n. 58.    (4) 28 C. J., p. 676, n. 22, 23.

2. See 12 R. C. L. 936.
4. See 12 R. C. L. 971.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Frank J. Murasky, Judge. Affirmed.

The facts are stated in the opinion of the court.

Earl C. Partridge for Appellant.

Gerald C. Halsey, Frederick T. Leo and Philip C. Boardman for Respondents.

FINCH, P. J.—The plaintiff has appealed from the judgment herein in favor of defendants.

Sophia R. Winslow, plaintiff's mother, died May 1, 1919, leaving a last will and testament, executed September 28, 1914, by the terms of which she made disposition of her real and personal property. The will was duly admitted to probate and defendant Mary D. England, decedent's daughter, was appointed executrix. Defendants Don and Robert Skellenger are sons of the plaintiff, both of whom were minors at the time of the trial. The plaintiff and all of the defendants are beneficiaries under the will. December 14, 1903, in the settlement of the estate of plaintiff's aunt, Caroline E. Cogswell, there was distributed to him property of the value of about $85,000, consisting of stocks, bonds, and $10,598.89 in cash. Out of the property so distributed to him the plaintiff delivered to his mother property of the value of $20,000, consisting of money and bonds, which he alleges was "to be held and invested for said plaintiff in trust" for him under an agreement "wherein and whereby it was agreed that said Sophia R. Winslow would have a life estate in said moneys and said bonds and the income thereof and that upon the death of the said Sophia R. Winslow said moneys and bonds or the property in which said moneys had been invested should go to and vest in the plaintiff." Some of the money delivered by the plaintiff to his mother was by her invested in a city lot and the construction of flats thereon and certain bonds so delivered were held by her at the time of her death. The prayer of the complaint is that "it be adjudged and decreed that Sophia R. Winslow held the herein described real and personal property in trust for the plaintiff herein and that the said Sophie R. Winslow was

81 Cal. App.—12

the owner of a life estate only in said property and that plaintiff herein is the owner in fee simple absolute of the property herein described and that the defendant, Mary D. England, be required to deliver to plaintiff herein all the personal property and money herein described."

On issues raised by the answers of the several defendants the court found that "on or about December, 1903," the plaintiff and his mother entered into a written agreement, "under and by the terms of which agreement he gave to his mother money and other personal property . . . of the total estimated amount and value of $20,000, with the full right and power to invest, use or dispose of the same or any part thereof as she might see fit during her life, . . . that any of said moneys or property remaining at the death of said Sophia R. Winslow should revert to said Harry D. Skellenger, or to his heirs"; that in the year 1907 she invested a part of the money so given her in the aforesaid lot and flats; that at the time plaintiff received the $85,000 referred to herein "he and Sophia Batchelor, the guardian herein of the minor defendants, Don and Robert Skellenger, were husband and wife, and said minor children, Don and Robert Skellenger, are the children of said marriage; that in the month of November, 1906, said Sophia Batchelor, as the wife of said Harry D. Skellenger, did commence an action to obtain a decree of divorce from Harry D. Skellenger, and for the support of herself and said two minor children; that about the time of the commencement of said action for divorce, but prior thereto, and after the execution of the said agreement, . . . but before said Sophia R. Winslow had invested any portion of any money or property received under such agreement in the real property or flats hereinabove described, said plaintiff, Harry D. Skellenger, freely and intentionally gave and voluntarily transferred, released, and relinquished all of said money and other personal property to his mother, said Sophia R. Winslow, absolutely, and said money and personal property and the property described hereinabove was never given back to said plaintiff by his mother, but thereafter and up to the time of the death of said Sophia R. Winslow, the said money and personal property and the said real property hereinabove described was the sole and separate property of said Sophia R. Winslow in fee simple absolute; and by reason of said gift of all

of the said property to his mother, plaintiff's said first wife, Sophia Batchelor, and said minor children, Don and Robert Skellenger, said children then being infants, and still being minors, by way of property settlement in said divorce action, received from plaintiff the sum of only $4,600, which last amount plaintiff borrowed from his said mother; that thereafter, and in the early part of the year 1919, . . . and prior to the 13th day of March, 1919, said plaintiff did direct and instruct his said mother, Sophia R. Winslow, to destroy the said agreement in writing hereinabove referred to, with the intent, purpose and object of vesting the ownership of said money and personal property in her absolutely, and at said time said plaintiff freely and intentionally gave, released and relinquished to his said mother any right, title or interest in or to said property which he had or might have had by reason of the existence of said agreement, or its proceeds in whatever form it might then have been, and did further then and there confirm the ownership in fee simple absolute of said property and its said proceeds in his said mother, Sophia R. Winslow; . . . that a few days after such authority and direction was given by plaintiff to his said mother, the said Sophia R. Winslow, did, pursuant thereto, destroy the said written agreement; and at all times subsequent to the making of said gift in the year 1906, by plaintiff to his said mother, and up to the time of her death, the said Sophia R. Winslow had full and complete dominion and control over all property, both real and personal, hereinabove mentioned; that at all such times the said Sophia R. Winslow had and was entitled to the possession of all of said property and held the legal title thereto as her own sole and separate property.''

The attorney who drew the agreement between the plaintiff and his mother testified that it was executed about the time the estate of the plaintiff's aunt was distributed; that the terms of the agreement, according to the recollection of the witness, ''were that Mr. Skellenger was to convey to his mother money and stocks or bonds, I don't remember which, to the amount, as I remember it, of $20,000. . . . She . . . agreed that she would keep that sum and invest it and that she was to receive the income from it as long as she lived and at her death the principal was to revert to Mr. Skellenger. The document contained more than that, but that is my best recollection of the gist of its terms.'' The plaintiff

testified that he placed his copy of the agreement in his mother's safe deposit box; that he last saw it "a short time before the earthquake"; that his mother had a copy which she placed in the same safe deposit box; that "the agreement read like this: $20,000 to be given to my mother for her lifetime, and all moneys and all properties left after her life was to revert to me or my heirs"; that he told his mother to burn the agreement "about four years ago, I believe, when I was in the insane asylum" as an inebriate; that his present wife (he having contracted a second marriage after his first wife was granted a divorce) applied for letters of guardianship of his person and estate; that "it made me pretty sore when she served those papers on me, and . . . I told my mother to burn up these papers . . . so that my wife couldn't get hold of them. . . . Q. . . . You do not mean that it was your intention to divest yourself of your claim to this property? A. Not on your life. I had to have something to protect my other two boys (Don and Robert). . . . Q. You had prior to that had you not made a conveyance of your property in Napa County to your present wife? A. I did." The plaintiff further testified that about the time the agreement between him and his mother was executed, "I signed over everything I had to her, . . . all properties, all moneys and all properties. . . . I gave it to her so that she would be independent, . . . she wouldn't have to come to either one of us; I gave her a lifetime interest in this money, and all money and all property was to revert back to me after her death. . . . Q. Did you testify as a witness in your divorce proceedings in 1906? A. I think so. Q. Isn't it a fact that you testified on that occasion . . . that you had absolutely nothing, no property or money or interest of any kind whatsoever? A. I testified at that time because as I told you before I turned over all my property to my mother at that time. . . . Q. Previous to 1906 you had turned over all your property to your mother absolutely? A. Yes, she had charge of all my property. Q. And at that time in 1906 you did not claim or assert any interest whatsoever in any property held by your mother? A. I disremember. Q. You are quite positive that you testified that you had absolutely no property or interest whatsoever, in the divorce proceedings? A. I think that is correct; I wouldn't be positive of it; I think

it is correct.   Q. The reason why you testified so under oath was because you had previously to that time turned over to your mother all of your properties and interests absolutely? A. I think so. . . . Q. Did you ever make any conveyance in writing of any of this property to your mother? A. I did not." Mrs. Sophie Batchelor, the former wife of plaintiff, testified: "Q. Were you present in court . . . in 1906 and 1907 when the plaintiff in this case, Harry D. Skellenger, was in court testifying as to his property and his holdings or interest in property? A. Yes, sir. . . . Q. What did he say at that time in regard to this property? A. He said that he did not have any money of his own; that what he had received in this will was given to his mother in fulfillment of a promise made to her. . . . That he hadn't anything. Q. What did he say regarding the $4,600 that you received under this interlocutory decree pursuant to that agreement? A. He said that was his mother's property, . . . it was not his. . . . Q. In 1919 . . . were you present at any conversation or conversations in which his mother and he took part? A. Yes. . . . That was in the latter part of February or the early part of March. . . . There had been some conversation in an adjoining room which I did not overhear. . . . As he was about to leave his mother . . . said, 'Well, Harry, now I will destroy those papers.' He said, 'Mother, you can do as you please; I don't give a darn what you do. I have given it to you.' . . . I did not know to what it alluded, not having known anything about any agreement." Mary D. England testified that she saw the agreement, "about a year or so before the earthquake" and also two or three years prior to her mother's death; that it provided "that Harry was to receive the money after mamma's death; that was left. . . . Q. 'Money that was left'; did it state what that meant? A. No, I don't know that it did." Fred C. Skellenger, plaintiff's brother, testified that shortly after Mrs. Winslow's death, "I says to him (plaintiff), 'Now, you give mamma that property to do as she pleased with it,' . . . the property of the flats and the stocks, whatever it was. . . . He as much as acknowledged that he did, but . . . he wouldn't let it go through, because he said he didn't want the Englands to have another dollar of his money." Lulu B. Skellenger, the wife of Fred C. Skellenger, testified that, at the time referred to in her husband's

testimony, "We said the change that mother had made in the will was done with his consent, after he had given her the property to do as she pleased with and had told her to destroy the agreement. . . . He said that he had changed his mind; that he at that time told her to do as she had done, but that he had changed his mind because he did not want the Englands to get any more money through him." The plaintiff denied having made the foregoing statements. There is other testimony tending to support the respective theories of the parties, but since such testimony only affects the weight of the evidence, which is substantially conflicting, it need not be set out, except in so far as it relates to the will of Mrs. Winslow.

The will was executed September 28, 1914. March 13, 1919, Mrs. Winslow cut out and burned the third paragraph of the will, and on the margin of the page upon which that paragraph appeared she wrote, in her own hand, the following:

"March 13, 1919. Having changed my mind abut about paragraph No III I cut it out myself I wold like to have Dan & Rabart Skellenger sones of my son Hary D. Skellenger have the rents of flats 6 flats on Caselli Ave until they are 21 and then to be sold and my 3 children Fred Harry and Mary England to shair and share alike.

"SOPHIA R. WINSLOW."

L. M. Hoefler was a subscribing witness to the original will. It was stipulated at the trial that Hoefler, if called as a witness, would testify that the third paragraph of the will was as follows: "My son Harry D. Skellenger having given me certain moneys which he received from the late Mrs. Dr. H. D. Cogswell with the understanding that I should use said moneys as long as I should live and upon my death whatever remained of the said moneys or of property purchased therewith should revert to my said son Harry, and the moneys so given me having been invested and used by me in the building of the six flats known as Nos. 179–179A–179B–181 181A and 181B Caselli Avenue, San Francisco, California, I therefore give, devise and bequeath the said six flats, together with the lot upon which the same are situated, to my said son Harry D. Skellenger." Mary D. England testified that she was present when her mother cut

out the third paragraph of the will; that the third paragraph "just said that the flats and the money that was in the bank was to revert to my brother Harry at her death"; that it did not state "where she had gotten the money to invest in these flats"; that she was certain the third paragraph did not read as stated by Hoefler; that she read that paragraph carefully, and had seen the will "a great many times." By the terms of the will three bonds of the Oakland Transit Company, of the par value of $1,000 each, which plaintiff had given to his mother at the time of the execution of the agreement, were given to Don and Robert Skellenger. The total value of the estate of Mrs. Winslow, as shown by the inventory and appraisement, is $18,195.56.

[1] If it be conceded that the finding to the effect that the original agreement between the plaintiff and his mother gave her the right to use or dispose of the property "as she *might see fit* during her life" is without support in the evidence, the plaintiff's testimony that by the terms of the agreement he gave his mother the property "for her lifetime, and all moneys and all properties *left after her life* was to revert to me or my heirs," is sufficient to warrant the inference that she was thereby given a life estate in the property, with the right to consume such part of the principal as reasonably might become necessary for her support, and that the plaintiff retained a vested remainder in the unused portion thereof. (*Hardy* v. *Mayhew,* 158 Cal. 95, 103 [139 Am. St. Rep. 73, 110 Pac. 113]; *Luscomb* v. *Fintzelberg,* 162 Cal. 433, 441 [123 Pac. 247]; *Adams* v. *Prather,* 176 Cal. 33, 40 [167 Pac. 534]; *Colburn* v. *Burlingame,* 190 Cal. 697, 700 [27 A. L. R. 1374, 214 Pac. 226].) Mrs. Winslow was not a trustee in the ordinary sense in which that word is used. In a similar case it is said: "Judge Mayhew was a trustee only in the sense that the duty rested on him, as a life tenant merely, to have due regard for the rights of those in remainder, a duty in the nature of a trust constituting him an implied or *quasi* trustee for *the remainderman.*" (*Hardy* v. *Mayhew, supra,* p. 104.) The relation created by the agreement was that of life tenant and remainderman.

[2] The court found in effect that in the year 1906, shortly after the execution of the agreement and before any of the money had been invested in real estate, the

plaintiff made an absolute gift to his mother of the property referred to therein and that in the year 1919 he confirmed the gift. The only evidence tending to support the finding that such gift was made in the year 1906 consists of the declarations of the plaintiff and the conduct of the parties to the agreement. Appellant contends that such evidence is insufficient to establish the gift, quoting from 28 Corpus Juris, page 681, as follows: "Declarations and admissions of an alleged donor in respect to a gift are not in themselves sufficient evidence to establish the gift. . . . But since they are admissible as evidence of his intention, they are to be weighed by the jury and, when considered together with other corroborative evidence showing a delivery of possession, and an absolute parting of all dominion or interest in the subject of the gift, may be sufficient to establish the gift. It has been held that the fact of delivery must be shown by other evidence than the mere declarations of the donor." In the next sentence following the language quoted it is said: "By the weight of authority, however, the delivery may be proved by the declarations of the donor, just as the gift itself may be." On page 638 of the same volume it is said: "Where property is at the time of the gift in the possession of the donee, as agent for the donor or otherwise, it is not necessary that the donee should surrender to the donor his actual possession in order that the latter may redeliver it to him in execution of the gift, but a relinquishment by the donor of all dominion over the property, and recognition of the possession of the donee as being in his own right, is sufficient to perfect the gift." In *Wilson* v. *Hotchkiss*, 171 Cal. 617, 619 [Ann. Cas. 1917B, 570, L. R. A. 1916F, 389, 154 Pac. 1], the same rule is applied to a sale made to a vendee in possession. Section 1147 of the Civil Code reads as follows: "A verbal gift is not valid, unless the means of obtaining possession and control of the thing are given, nor, if it is capable of delivery, unless there is an actual or symbolical delivery of the thing to the donee." In *Adams* v. *Merced Stone Co.*, 176 Cal. 415, 418 [178 Pac. 498, 499], it is said: "That the fact that the thing was already in possession of the donee at the time of declaring the gift is not enough, is well settled by the authorities." That statement, however, is mere *dictum*. The alleged gift in that case was of intangible property, being an indebtedness due the donor

from the defendant corporation, evidenced only by the books of the corporation, and the gift was made in view of death. The donor died before the trial, and the only evidence offered to prove the gift was the uncorroborated testimony of the donee that the donor had made a verbal gift of the property to him, he being the president and general manager of the corporation. The court said: "In the case of a chose in action not evidenced by a written instrument, the only means of obtaining control that is recognized by the authorities is an assignment in writing, or some equivalent thereof." Of the decisions cited by the court in support of the *dictum* quoted, *Denigan* v. *Hibernia etc. Society*, 127 Cal. 137 [59 Pac. 389], involved the question of a gift by a wife to her husband of money which was the separate property of the wife deposited in a savings bank, she having taken a pass-book showing an account with the bank in the alternative names of the husband or wife, and it not being "shown that the husband had any possession of the bank-book until after the death of his wife." The court said that "the idea of a gift is inconsistent with the retention by the wife of the right in herself to withdraw the whole of the money from the bank." The other cases cited involved the validity of gifts made in view of death. In one of them, *Drew* v. *Hagerty*, 81 Me. 231 [10 Am. St. Rep. 255, 3 L. R. A. 230, 17 Atl. 63], it is said: "A gift *inter vivos* may be sustained without a distinct act of delivery at the time of the gift, if the property is then in the possession of the donee, and the gift is supported by long acquiescence of the donor, or other entirely satisfactory evidence. This court has so held." In *Gray* v. *Gray*, 111 Me. 21 [87 Atl. 661], it is said: "The law requires gifts *inter vivos* to be completed by actual delivery to the donee, or to some person for him, unless the property which is the subject of the gift is at the time in the possession of the donee, in which case the evidence must be clear and satisfactory that the donor had relinquished all control of and claim to the subject of the gift." This statement of the law applicable to verbal gifts is supported by the great weight of authority. As has been stated frequently, however, if the evidence in any case is sufficient to support a finding, the question whether it is clear and satisfactory is for the trial court. The requirement of clear and satisfactory evidence to establish a verbal gift is specially ap-

plicable in a case where the alleged donor has died prior to the trial and the only evidence offered to prove the gift is the testimony of the donee. This was the situation in *Adams* v. *Merced Stone Co., supra.* Here the position of the parties to the gift is reversed, the donee having died and the donor appearing in court to testify. "Evidence is to be estimated not only by its own intrinsic weight, but also according to the evidence which it is in the power of one side to produce, and of the other to contradict." (Code Civ. Proc., sec. 2061.)

Mrs. Batchelor testified that in the divorce action the plaintiff stated that he had given the property received from his aunt's estate to his mother "in fulfillment of a promise made to her." The plaintiff testified that he had "signed over everything" that he had to his mother "so that she would be independent"; that in his wife's action against him for a divorce in 1906 he testified that he "had absolutely nothing, no property or money or interest of any kind whatsoever"; that he did not remember whether he then claimed or asserted any interest in the property held by his mother; that the reason he so testified in the divorce action was because he had previously turned over to his mother all of his "properties and interests absolutely"; that he had placed his copy of the agreement in his mother's safe deposit box and had not seen it since a short time before the earthquake; and that subsequently, in the year 1919, he had directed his mother to destroy the agreement. His surrender in 1906 of possession of the agreement, which was the only written evidence of his rights in the property, and his subsequent direction to destroy it are consistent with the findings of the court and inconsistent with his present claims. His testimony at the hearing in the divorce action did not consist of unguarded statements, but they were made deliberately, under oath, for the purpose of defeating the claim of his wife and children for support. Having convinced the court in that case that such statements were true, the plaintiff cannot justly complain of the court's finding in this case to the effect that they were true, where a contrary finding would deprive the children of the support which his mother provided for them out of the same property which he testified in the divorce action he had given to her.

[3]   Appellant contends that the court erred in refusing to strike out testimony of Mrs. England that, at the time the agreement was burned, her mother said: "I can do anything I please with this money." No objection was made to the question to which the answer was responsive. [4] In 28 Corpus Juris., page 676, it is said: "The declaration of a donee in possession to the effect that he claims the property by gift is inadmissible as substantive evidence of the gift; but is admissible as tending to show claim of ownership, or to rebut any inference of an admission against his ownership." The fact that by her will, executed in 1914, Mrs. Winslow gave to her grandsons a part of the specific property which the plaintiff had delivered to her tends to show that she then claimed absolute ownership of the property.

The judgment is affirmed.

Preston, J., *pro tem.*, and Plummer, J., concurred.