## WEST et v AMERICAN TELEPHONE & TELEGRAPH CO

Ohio Appeals, 8th Dist, Cuyahoga Co

No 15504.   Decided Nov 9, 1936

Garfield, Cross, Daoust, Baldwin & Vrooman, Cleveland, and Maurice J. West, Cleveland, for plaintiff-appellees.

Tolles, Hogsett & Ginn, Cleveland, William B. Cockley, Cleveland, and P. J. Mulligan, Cleveland, for defendant-appellant.

ROSS, PJ, (1st Dist) SHERICK and MONTGOMERY, JJ, (5th Dist) sitting by designation.

### OPINION

By MONTGOMERY, J.

Charles P. West, Sr., died March 21, 1926, leaving as his next of kin the two plaintiffs-appellees, his sons, and leaving his widow, Grace C. West, who was, incidentally both the aunt and the stepmother of the plaintiffs. The widow and the two sons are all now living.

The decedent died intestate, and items two and three of his will are in the following language:

"Item II.   I give, devise and bequeath to my beloved wife, Grace C. West, in lieu of her dower and year's support, the use, income, rents and profits of all of my prop-

erty of every kind and nature and where-soever the same may be located, for and during her natural life, to use, enjoy and dispose of the same as she may deem best.

"I hereby give to my said wife authority with the consent and advice of my two sons hereinafter named, without the intervention of the Probate Court, to convert any or all of my real estate or securities into money and to invest and reinvest the same and any other moneys I may have at the time of my decease in such manner as she and my said sons may determine.

"Item III. After the decease of my said wife I direct that all of my said property be divided equally between my two sons, Charles Peyton West and Maurice John West, share and share alike or their heirs per stirpes, or in case of the death of either without leaving lawful heirs of his body, then all of said property shall go to the survivor of them."

The widow was named as executrix, without bond, qualified as such in the Probate Court of Cuyahoga County paid all the debts of the estate and the costs of administration. Thereafter, on January 14, 1927, the executrix filed in the Probate Court of Cuyahoga County an application which listed among the assets of the estate shares of the capital stock of various corporations, included therein being 92 shares of the capital stock of the appellant, American Telephone & Telegraph Company. The application recited:

"Your applicant further says that by the terms of the last will and testament that all said stocks are bequeathed to her for and during her natural life. Your applicant, therefore, asks the court to transfer said stocks to her, the within named Grace C. West."

Attached to this application appeared the following, duly signed:
"We, the undersigned, Charles P. West, Jr., and Maurice J. West, hereby consent to the foregoing distribution in kind."

The Probate Court entered an order which, after reciting the application and the consent heretofore referred to, concluded with:
"Wherefore said application is granted, and it is by the court ordered that said applicant, Grace C. West, be and she is hereby authorized and directed to distribute in kind and transfer unto herself as the widow of said Charles P. West, deceased, and the distributee entitled thereto, the aforesaid stocks as prayed for."

On February 2, 1927, Grace C. West delivered at the transfer office of the appellant in New York City the certificate for the 92 shares duly endorsed by her as executrix together with a certified copy of the will of the decedent, of her application with the consent of the appellees attached and of the journal entry of the Probate Court, and, upon the production of these documents, the appellant caused to be issued a new certificate for said 92 shares to Grace C. West, individually, and without limitation.

Some time thereafter, presumably in 1929, Grace C. West sold these shares of stock represented by her certificate to an innocent purchaser for value, and on November 2, 1929, this purchaser presented the certificate, with the duly executed transfer by Grace C. West, at the transfer office of the appellant and obtained in lieu thereof a new certificate issued to said bona fide purchaser.

The record shows that the appellees had no notice until the spring of 1934 of the fact that the stock had been transferred to Grace C. West individually, or that she had sold and transferred the same to any other person. In June, 1934, they brought suit against the appellant for the value of the stock on the theory of conversion.

The amended answer filed by the company contained three defenses. First, that each of these transfers made by it was regular and properly made, and that consequently there was no liability attached to it; second, that the plaintiffs were estopped by their conduct from raising this claim in this action; and, third, that their cause of action, if any, was barred by the statute of limitations of four years.

The cause came on for trial in the Court of Common Pleas before a jury, and, during the progress of the trial, by consent of counsel the jury was discharged and the cause was submitted to the court. While the trial court in his opinion used expressions which might indicate an uncertainty as to the nature of plaintiffs' cause of action, he, nevertheless, apparently did treat the cause as one of damages for trover or wrongful conversion of property and found on behalf of the plaintiffs below and rendered judgment against the defendant in the sum of $29,526.47, being the amount which he found to be the value of the stock as of November 4, 1929, together with interest thereon at 6% from said date.

From that judgment an appeal was perfected to this court upon questions of law. For some reason counsel for appellants do not assign as error the failure of the trial court to sustain the motion of the defendant below for judgment at the conclusion of the plaintiffs' evidence, or at the conclusion of all the evidence, although the record shows that such motions were made. However, one assignment of error is that the court overruled the appellant's motion for a new trial, and a reference to that motion shows that one ground of it was that the judgment of the trial court was contrary to law, and it seems to us that counsel have thereby saved the question, and that this court can with propriety consider the proposition as to whether or not the defendant below was entitled to judgment upon the pleadings and the evidence.

We find no difficulty in arriving at the conclusion that this corporation was at fault in making these transfers as they were made. It had before it a copy of the will of the testator with the other papers attached. These papers clearly show that Grace C. West had only a life estate in the property and that these appellees had an interest therein as remaindermen. The company was put upon its guard, and in issuing new certificates of stock did so at its peril, if it did not issue the same in accordance with the rights of the interested parties thereto. Having made this wrongful transfer in 1927 to the widow, it was not protected or saved by her subsequent transfer of the stock to a bona fide holder in 1929. While, as stated by counsel for the appellants, the original transfer to the executrix as an individual, was wrongful, the subsequent transfer to an innocent holder wrought the harm.

Furthermore, we cannot, and do not find that the plaintiffs were estopped from asserting any claim against this corporation; they consented to nothing more than the distribution of the stock in kind.

The general proposition is correctly stated in Thompson on Corporations, Second Edition, Volume 4, §4423, wherein it is held that:

"A wrongful transfer with knowledge of the claims or rights of a third person will render the corporation liable as for conversion."

An interesting case is that of Stewart et, Trustees v Firemans Insurance Company, 53 Maryland, 564, where, in discussing a state of facts somewhat similar to the facts in the instant case, the court held:

"There was such negligence on the part of the appellees' officers (it being chargeable with knowledge) in allowing the transfers of the stock to be made, as rendered the appellees responsible to appellants for the resulting loss."

There is, therefore, in our judgment, no question as to the wrongful and harmful act of this corporation, and that, as a result thereof, the appellees have some basis of action against it. Taking the view which we do, however, there is no occasion for passing upon the defense of the statute of limitations or the question as to whether the trial court correctly figured the damages, and these two matters become altogether unimportant.

In this case, under the facts as shown, the appellees are remaindermen. They have not at any time had, nor do they now have, the right of possession of the original certificates of stock, or of any certificates issued in lieu thereof. They have not at any time been, and are not now, entitled to any dividends upon this stock. These rights would accrue to them only upon the death of the widow. Until that time they have no right to anything in connection with this stock, other than the right to have their title as remaindermen therein protected and assured.

The rule is well stated in the 10th branch of the syllabus of the case of Carpenter v Deneen et, 29 Oh St, page 379, in this language:

"A deed of conveyance by a tenant for life purporting to convey the title in fee, passes the life estate, but does not forfeit it to the reversioner or remaindermen."

Of course, that case dealt with real estate, but there is no difference in principle between the two, and, in our judgment, this rule is applicable to the instant case. We cannot accede to the claim of acceleration advanced by counsel for the appellees.

As we have heretofore stated, these appellees are entitled to some relief against this corporation. In our judgment they are entitled to demand of the company the return of these certificates of stock or of other stock of equal par value, the same to

be issued in such a manner as will protect the interests of all parties concerned, and will insure to these appellees the possession of the certificates and dividends thereon from and after the death of the life tenant. They are entitled, further, in the event of refusal or inability to comply with this demand, to maintain an action for damages for such refusal or failure. Until they have made such demand they have not, in our judgment, any cause of action against this corporation.

"A corporation is liable in conversion for refusal to transfer stock on its books at request of one entitled thereto." (Bates Pleading, Practice, Parties and Forms, Vol. 2, page 1307).

"While an action in equity may be resorted to by the transferee of stock to compel the issuance of a new stock certificate in place of the old one, and is probably the most complete and just remedy, the transferee may treat the refusal to transfer as a conversion, and bring an action at law against the corporation for damages." (10 Ohio Jurisprudence, §317).

"Where a corporation permits an erroneous or wrongful transfer of stock, it may be compelled to replace it if there are shares within its control, or, if there are no other shares within its control, it must respond in damages." (14 Corpus Juris, 776).

In the case of Stewart v Firemans Insurance Company, 53 Maryland, 564, supra, the court further held that the complainants were entitled to a decree compelling the company to replace the stock on their books in their names as trustees and issue a proper certificate therefor, or to pay them the market value of the stock at the time of the unauthorized transfers.

Attention is directed to the case of Railroad Company v Robins, Admr., etc., 35 Oh St 483, which was a case where the railroad corporation had wrongfully issued a certificate of stock without first taking up the outstanding certificate in lieu of which the new one was issued, and the court held that the holder of the outstanding certificate had a cause of action against the railroad company. The first branch of the syllabus in that case is as follows:

"The issuing of the new certificates to B. & P., and the allowing of the transfer of the stock to them, was a breach of a duty which the company owed to F., as the holder of the original certificates, and this breach of duty created a liability on the company to replace the stock to which F. was entitled, or to account for its value."

An interesting case is that of Allen, Executor v Globe Insurance Company, a decision of the Superior Court of Cincinnati, reported in 10 Ohio Decisions, reprint, page 204. That case based upon facts having some similarity to the instant case, held that the wife took the personal property for life; that the presentation of the certificates of stock for transfer, the company being informed of the existence of the will fixing the several estates therein, that the latter is presumed to have knowledge of the contents of the will and is chargeable with liability to a stockholder for the value of the stock wrongfully transferred by the officers of the company. The concluding statement in the opinion, as found on page 211, is:

"As the company caused the transfer without due authority, it is bound to return to the present executor, the same or an equal amount of the stock, or to pay the value of the same in money, and for the amount of the dividends declared since the wrongful transfer."

The essential difference in the facts between the two cases, as directed to the last clause in the foregoing quotation, is that it did not involve the distinction between dividends accruing during and after the lifetime of the life tenant.

Attention is directed to the case of Marbury v Ehlen et, Court of Appeals of Maryland, reported in 19 Atlantic Reporter, page 648. That case not only holds as we hold here, the corporation liable, but negativing the claim of acceleration by the wrongful transfer, holds that the fund must remain intact while the trustee is alive, and is, as we view it, authority for the proposition that the corporation must restore this stock or its equivalent, insuring dividends to the appellants after the death of the widow, but permitting the payment of dividends until that time solely to bona fide holders of the stock. The syllabus in the case of Marbury v Ehlen is as follows:

"1. Where stock on the books of a corporation in the name of a testator is transferred to a trustee by the executors under authority in his will, and the trustee afterwards assigns the stock on the books to

another without an order from the orphans' court as required by Code. Md. 1860, Art. 93, §274, and in violation of the terms of the will, and in fraud of the cestuis que trustent, the corporation is chargeable with knowledge of the limited powers of the trustee, and liable notwithstanding the lapse of time between the two transfers. The corporation, having been once informed that there was a will under which the trustee must act, continues chargeable with a knowledge of its terms."

"2. An assignment to the trustee of all the interests of the cestuis que trustent except one cannot help the corporation, since by the will the trust is for the benefit of the trustee's children now living, or that may hereafter be born, and the trustee being still alive, the full effect of the assignment cannot be determined, though ultimately the corporation will be entitled to be subrogated to the shares of those who have released. Until the death of the trustee the fund must remain as an entirety."

Counsel for appellees have cited and commented upon many other cases both in their briefs and in their oral argument, but none of these cases cited or commented upon are, in our judgment, parallel to the instant case, nor do the decisions therein establish any binding precedent. Those cited cases have to do with the wrongful refusal of the corporation to transfer stock to one entitled thereto, or when brought by remaindermen were brought when the same were entitled to possession, and after the death of the several life tenants.

An exception to this proposition is to be noted in the case of Coffey v Wilkerson, 58 Kentucky, page 101, decided in 1859. This case is cited by counsel for the appellees as sustaining their contention that there was an acceleration of the title to the remaindermen. The first branch of the syllabus of that case is as follows:

"1. If the tenant of the life estate in slaves sell the absolute right and title in them to a negro-trader, who follows the business of taking slaves to a southern market such sale is a conversion of the slaves to his own use in such manner as to defeat the estate in remainder, and a right of action accrues eo instanti to the remainderman against the tenant for life, for the value of the slaves, etc."

The facts in that case, however, show that the purchaser of the slaves from the life tenant had sold them and they had been taken to parts unknown, and as the court stated in its opinion, "with the effect of defeating the enjoyment of the estate in remainder." Of course, with the slaves transported to places unknown there could be no enjoyment of their use by the remaindermen, when they should be entitled to possession. That is not the situation in the instant case, in view of what we have indicated, as to the rights and duties of the parties hereto.

It is to be observed that the title to shares of stock is now determined by the Uniform Stock Transfer Act, being §§8673-1 GC, et seq. In §8673-1 GC it is held that the title to a certificate and to shares represented thereby can be transferred only (a) by delivery of the certificates properly endorsed, or (B) by delivery of the certificates and a separate document containing a written assignment of the certificates for power of attorney to sell the same, etc.

A majority of this court had occasion to cite and construe this section as an incident to its decision in the case of Kellogg-Mackay v O'Neal, 39 Oh Ap 372, at 381, (11 Abs 3).

The other member of this court, as now constituted, and his associates of the First District, held in the case of Pure Oil Company v Hunt, Receiver, 46 Oh Ap 329, in the third and fourth branches of the syllabus as follows:

"3. Corporation cannot be held for conversion of stock unless in some way it directly repudiates title of owner by refusing to give certificate force given it by statute (§§8673-1, 8673-6, 8673-7 and 8673-17 GC).

"4. In action for conversion of stock, permitting jury to allow recovery based on acts of corporation in cancelling certificates upon its books held erroneous since under Uniform Stock Transfer Act it is necessary to allege and prove direct, definite refusal by corporation to acknowledge rights conferred on owner of stock by his possession of certificate therefor (§§8673-1, 8673-6, 8673-7, 8673-17 and 8623-30a GC)."

On page 333 of this case, the court in its opinion held:

"If transfer of title can only be effected by delivery of the certificate, then the corporation in order to cause a conversion of the stock, must in some way directly repudiate the title of the owner by refusing to give the certificate the force given it by

the statute. Until it does so, while it may commit acts which may give the owner a right to cause rescission, there can be no conversion."

We note that our Circuit Court of Appeals, 6th Circuit U. S. in the case of American Steel Foundries v Hunt, reported in 79 Federal Reporter, 2nd Series, at page 558 on page 561 approved the decision in the case of **Pure Oil Co. v Hunt, 46 Oh Ap 329,** supra.

Our Circuit Court of Appeals in the third branch of the syllabus in that case held:

"3. Trover will lie for conversion of corporate shares, where transfer upon corporation's books, passes title, or where transfer was caused by corporation's agents, or where corporation by some overt act in violation of its trusteeship repudiates shareholder's ownership."

In the course of its opinion, referring to the facts in the case of American Steel Foundries v Hunt, the court said: "Here there was neither allegation nor evidence of demand and refusal, nor evidence of any positive repudiation of appellee's ownership."

It follows that the judgment of the Court of Common Pleas will be reversed, and final judgment may be entered for the appellant.

Exceptions may be noted.

ROSS, J, concurs.
SHERICK, J, concurs in judgment.

### CONCURRING OPINION

By SHERICK, J.

I concur with my associates in the conclusion reached and the reasons assigned, except in one respect. It is my notion that the appellees' right of possession, with the proper noted limitation, has been accelerated.

**Carpenter v Deneen, 29 Oh St 379** is sound. Its application to shares of corporate stock, negotiable by endorsement and delivery, to me seems improper. A life tenant attempting to convey away the fee of real estate can convey no more than the life estate. His grantee may enjoy it but he must return the fee at the death of the life tenant. In the case of the stock in question, the innocent purchaser need not restore anything; possession, voting power or the right to future dividends. The corpus of the bequest with all its attributes has completely passed. Therefore, the rights or position of the life tenant's assignee plays no part in the question of acceleration. Surely the remaindermen are entitled to possession as against the corporation which made the wrong possible. Its convenience should not be considered.

I do not read Marbury v Ehlen, 19 Atl. 648, as do my associates. The remainder in that case was left to a class that might be augmented or decreased. The remaindermen were not determinable until the death of the life tenant. It was therefore proper that the bequest be held in its entirety until death of the life tenant determined who should receive the remainder. In the present controversy the remaindermen are determined and entitled to immediate personal possession, limited as to earnings before the death of the life tenant.

The author of the note appearing in 18 L.T.A. (N.S.) 272, which cites **Holdren v Holdren, 78 Oh St 278,** states the general rule of acceleration of possession in those cases where a widow renounces the provisions of a will in her favor, in this fashion:

"Unless a contrary intention on the part of the testator is manifest, a renunciation by the widow of a life interest given her by the terms of the will is equivalent to a termination by her death. The rule restate upon the theory that the life estate or interest is presumably to be regarded as in the nature of a charge upon the gift over, the abolition of which permits the ultimate disposition to take immediate effect."

If such happens when a widow relinquishes a life tenancy. surely the same effect must follow when she does an act with respect to this legacy's remainder which destroys the charge upon the gift over, in so far as she or her assignee are concerned.